## HOOE v. HARRISON.

1. Where the father, a man of wealth, six or seven months after the marriage of his daughter, and when she and her husband were leaving the father's house to settle themselves in a distant State, delivered to the son-in-law sundry slaves, but fewer in number than his estate authorized to advance as a patrimony, it will be presumed that the delivery was intended as a gift to the son-in-law, and it devolves upon the father to show that they were intended as a loan or otherwise.

2. Where relief is sought in the case of a lost instrument as a guard upon the preliminary exercise of jurisdiction, an affidavit should be made that the instrument is lost. and not in possession or power of the complainant; but to sustain the suit, if the loss is not admitted by the answer of the defendant, it is necessary that it be established at the hearing of the cause by competent and satisfactory proof; and the affidavit itself is not admissible.

3. Upon a bill by the father to recover of his son-in-law certain property upon the allegation that it was sent with his daughter as a loan, if the father fails to sustain his case, the bill will not be retained to inquire whether the issue of the daughter who is dead, has any interest in the property.

Writ of Error to the Court of Chancery sitting in Pickens.

THE case stated in the original and amended bills may be thus condensed: The defendant, Harrison, intermarried with the daughter of the complainant in 1831, in King George county, Virginia—all the parties at that time residing in that State. At the time of the marriage, the defendant was a man of limited means, and not long after, the complainant suggested to him the propriety of visiting the western country with the view of locating there and acting as his agent in selecting lands and establishing plantations, and as an inducement to his doing so, proposed to provide him the means of support and the necessary funds. The defendant consented to carry out the complainant's suggestions; thereupon the latter selected from his estate sixteen slaves, whose names, together with their increase, are stated in the pleadings; but not being disposed to part with the title to these slaves, the

complainant required the defendant to execute an instrument in the nature of a receipt for them as a loan, until such time as he should choose to reclaim them. This writing was accordingly executed by the defendant on or about the 10th of December, 1831, and expressed that he had received from the complainant the possession of the slaves, to hold as a loan until the latter should think proper to call for them. Complainant excuses the non-production of this paper by alledging that on or about the third day of December, 1834, it was in his trunk, which was stolen from a hotel at which he was sojourning in the city of Tuskaloosa; and after diligent inquiry and search, he has never been able to recover the trunk or any part of its contents.

Shortly after the execution of the receipt, the defendant left Virginia and began to mahe a settlement in the Choctaw country in the State of Alabama. In December, 1834, the defendant's wife died, and in 1840, from rumors which reached the complainant, he supposed that matters were not well managed, and gave certain instructions to another agent in respect to one of the slaves, which were not executed as complainant believes in consequence of defendant's opposition; thereupon complainant judged it prudent to visit the plantation occupied by the defendant. Various causes interposed to prevent the complainant from carrying out his purpose until the 15th of February, 1842, when to his great surprise the defendant refused to deliver to him the sixteen slaves with their increase, or in any manner account for them, although he had repeatedly and at all times previously admitted the complainant's title to them. Other allegations are made charging that the defendant was complainant's agent in the purchase of land, &c. but as there is no litigation in this cause in respect to them, they need not be here noticed.

The equity of the bill is rested upon the ground that certain facts charged are peculiarly within the defendant's knowledge, so that a discovery by him as to these, are necessary to enable the complainant to obtain the relief he seeks: *Further*, that most of the slaves in controversy were reared in his family, and the others were acquired under such circumstances as makes their possession very desirable; that an

equivalent in money would not compensate him for their loss, &c.

The bill prays that the defendant may be compelled to deliver up the sixteen slaves together with their increase, that he may be compelled to render an account in respect to their management, the amount of profits and crops made by them since they were demanded in 1842; that the lost receipt may be established, and trusts arising under the same be performed and carried into execution; and that such other relief as is appropriate be granted. An affidavit affirming the loss of the receipt as alledged, accompanies the bill.

Defendant answered the bill, admitting the marriage of himself and the complainant's daughter about the time alledged, and his removal from Virginia to Alabama in December, 1831. He admits that he received the sixteen slaves of the complainant, but insists that they were an advancement by the latter to his daughter—whether the complainant intended to retain the title to the slaves he does not know; for he said nothing to defendant on the subject.

Defendant admits that at the time he received the slaves, he signed a short memorandum or receipt written by the complainant; he cannot undertake to say what were the terms of the paper, but believes the object was not to affect defendant's title as between complainant and himself. He denies, according to recollection and belief, that it was such as complainant alledges; thinks that complainant believed that by means of the receipt he would be able to prevent a sacrifice of the slaves, if the defendant should be unfortunate, or he may have desired to have evidence of what he had advanced the defendant as the husband of his daughter.

It is not admitted that the receipt is lost, but insisted that proper proof of this fact may be made. The letters of complainant to defendant as early as March, 1832, and repeatedly since, speak of these slaves as the property of the latter; extracts from some of these letters are embodied in the answer to the original bill. Defendant denies that he received or held the slaves as a loan or otherwise for complainant's benefit; that the complainant did not within defendantis knowledge or belief set up a claim to them, or deny the defendant's title, until February, 1842.

Defendant denies that he came to the southwest to settle plantations, &c. as alledged by the complainant. He expresses the belief that if the complainant could obtain the value of the slaves, his feelings would not suffer by being deprived of them. He answers fully in respect to his agency for complainant in purchasing lands and other matters.

The cause was heard upon the bills, answers, exhibit and proofs; whereupon the chancellor was of opinion that the answer was a denial of the allegations of the bill, and that independent of the influence of the answer, the testimony in favor of the defendant's title clearly preponderated; and the bill was accordingly dismissed with costs.

B. F. PORTER, for the plaintiff in error, made the following points: 1. The proof of the existence and loss of the receipt was abundant. [10 Johns. Rep. 374; 16 Id. 193; 20 Id. 144; 4 Cow. Rep. 483; 9 Id. 208.] 2. The delivery was a mere loan, and not a gift or advancement. [2 Hen. & M. Rep. 289; 3 Yerg. Rep. 60; 1 Hill's Rep. S. C. 194; 1 Hill's Eq. Rep. 12; 4 How. Rep. (Miss.) 524. 3. If the testimony does not show that the transaction was a loan, the defendant's admissions prove that it was a gift for his wife and child. Upon this hypothesis the estate should have been vested in the child, and not in the defendant; but by dismissing the bill, the defendant is made the beneficiary, and thus the donor's intention is defeated.

A. F. HOPKINS and E. W. PECK, for the defendant. The allegations that the slaves are family servants, &c. are not sufficient to give a court of chancery jurisdiction. [2 Stew. & P. Rep. 371; 3 Ala. Rep. 747.] If the receipt was lost, it furnished no ground for going into equity—an action at law could have been maintained, and the loss supplied by calling upon the defendant for a discovery. [1 Story's Eq. 99, 101, 103.] The affidavit of loss filed with the bill, was not evidence of the fact at the hearing, but the answer throws upon the complainant the *onus* of establishing it by competent proof. [1 Story's Eq. 104, 109; 9 Ves. R. 466.]

The original bill does not alledge the necessity of a discovery, and if it did, the answer furnishes a discovery by a

denial of all its allegations.   The amended bill is a mere pretence to give the court jurisdiction and the answer to it, denies the facts stated in it.   In this condition of the cause, the bill was properly dismissed.   [1 Story's Eq. 90, 91.]

Upon the proof, the case is clearly against the complainant.   He has failed to prove the existence and loss of such a receipt as he alledges the defendant executed for the sixteen negroes, though the establishment of both these facts are thrown on him by the answer.   [1 Pet. Rep. 600.]   In the absence of proof in cases like the present, the law presumes a gift.   [4 McC. R. 251; 3 Id. 207, 506; 3 Hen. & M. Rep. 127; 7 Ala. R. 652.]   But we are not left to presumptions for the evidence establishes a gift.   The defendant's answer in a suit in Mississippi, was introduced by the complainant, and thus made available for both parties—this shows that the slaves were given as an advancement of the defendant's daughter.   [2 Johns. Ch. Rep. 92; Gresley's Eq. Ev. 324; 1 Phil. Ev. C. & H. ed. 360.]   In addition to this, complainant's letters to the defendant, and the depositions, show the same fact.   As for the defendant's letters to complainant, they prove nothing adverse to his defence.

COLLIER, C. J.—In Olds v. Powell, 7 Ala. R. 652, it is said, " When property is sent home with a new married couple by the parents, it will be presumed to be a gift, unless at the time a less estate is declared or limited.   Whether it be a gift, or mere loan, is a question of intention; any fact therefore which affords evidence of such intention, is admissible as part of the res gesta."   [See also, 4 McC. Rep. 251; 16 Pick. Rep. 62; 2 Bay's Rep. 528; 3 Hen. & M. Rep. 127; 1 Hayw. Rep. 2; 2 Id. 66, 97.]   In order to warrant the presumption of a gift in such case, it is not necessary that the property be sent to the residence of the married pair; it is enough if it be delivered to the husband, or suffered to go into their possession. · [3 McC. Rep. 207, 506; 2 N. & McC. Rep. 93.]   So property in a slave, permitted by parents to go into the possession of a daughter, on her marriage, vests in the husband of the daughter.   [4 McC. R. 228.]   In Davis v. Webb, 1 McC. Rep. 213, it was held, that where there was an acceptance and continued possession of property

which a parent permitted to go into the possession of his son or daughter, upon his or her marriage, it may, by lapse of time be construed into a gift, though originally declared to be a loan. And in Keene v. Macey, 4 Bibb Rep. 35, it was decided, that if a father deliver slaves to his son-in-law upon marriage, without avowing the purpose of the delivery, and the son-in-law retains possession for five years, it should be left to the jury to determine whether it was intended as a gift or a loan. [4 Bibb's Rep. 35. See also, 1 N. & McC. R. 221.]

In the case at bar, it is apparent from the proof, that the complainant was quite advanced in life, with but two children, and the prospect of no more, that he was the proprietor of a large estate—amply able to bestow bounty upon his daughter far beyond the value of the slaves in question; that the defendant and his wife spent the greater part of their time at the complainant's house, during the six or seven months they sojourned in Virginia after their marriage, and upon leaving the State the slaves were delivered by the complainant to the defendant, to be taken to the new home which the latter and wife proposed to make in the south west. These facts impose upon the complainant the necessity of repelling by proof the inference that the delivery was intended as a gift, and still retained the title to the slaves. This he proposed to do, proving that the defendant executed a writing acknowledging their receipt, and stipulating for their return. The defendant admits that he gave a receipt, but denies that its import was such as the complainant alledges; thus throwing upon the latter the *onus* of sustaining the allegation of his bill.

Where relief is sought in the cases of supposed lost instruments, it is said, that as a guard upon the preliminary exercise of jurisdiction, an affidavit of the loss of the instrument, and that it is not in the posssession or power of the plaintiff, is indispensable to sustain the bill. But to maintain the suit it is necessary, if the loss Is not admitted by the answer of the defendant, that it should be established at the hearing of the cause, by competent and satisfactory proof. [1 Story's Eq. § 88.] Here the defendant has not only denied, upon information and belief, that the receipt which he executed

was lost, but has proved that the complainant repeatedly spoke of it as in his possession, years after the alledged loss. To countervail the effect of the answer and this proof, the complainant adduced no other evidence than his preliminary affidavit, which the authority cited, shows, was inadmissible at the hearing.

*Again:* the testimony in the cause falls far short of establishing that the slaves were delivered as a loan, or that the complainant retained his right to them, or that the defendant stipulated for their redelivery on demand, or upon a contingency or otherwise. The extracts relied on from the defendant's letters do not contain an admission or acknowledgment, direct or indirect, that the slaves were the property of the complainant. These, as well as all the testimony are altogether consistent with an absolute property in the defendant. This being the case, it is clear that the complainant is not entitled to the relief which he seeks.

The defendant has not only denied by his answer every thing of which the complainant's right to recover may be predicated, but he has shown by the complainant's letters, and the testimony of several witnesses, repeated admissions that the slaves were his property—had been given to him by the complainant. It is unnecessary to consider more particularly the evidence on either side; for it is so explicit and uncontradictory in its essential points as not to require argument to illustrate it.

There is certainly nothing in the record from which it may be assumed, that the defendant's wife, during life, or the offspring of the marriage since her death, had a separate or exclusive interest in the slaves. If such a hypothesis be well founded, it may be quite enough to say that the bill was not framed with a view to secure the supposed interest of any one else than the complainant himself, and the dismissal of the bill cannot prejudice the rights of third persons.

We are relieved by the view taken, from the consideration of the question, whether, if the transaction brought before us was a loan, it would not, at this distant day, be presumed from complainant's acquiesence in the defendant's possession,

64

that he had abandoned his right to the slaves, and thus made it a gift. It is profitless to examine the objections to the equity of the bill, or any other point raised at the argument. We have but to add, that the decree is affirmed.