# OWEN et al. vs. PAUL.

1. A vendee of land, who has re-sold it with covenant of warranty, and delivered up the possession, if the deed from the original vendor is lost, may apply to a Court of Chancery to compel the widow and heirs of the vendor to supply the loss, by a re-conveyance, without waiting until the heirs assert title to the land.

2. An averment in a bill, filed by a vendee to establish a lost deed, that he had caused search to be made "in all such places as he supposed it might possibly be found," is sufficient, without alleging that he had searched for it among his own papers.

3. The affidavit of the complainant of the loss of a deed, is not evidence of the fact of loss, but such loss must be proved, and is usually arrived at inferentially.

4. Where a bill alleges that a deed, charged to be lost, was deposited in the office of the Clerk of the County Court, proof should be made of a

Owen et al. v. Paul. ·

search in that office, as otherwise the presumption would arise that it was still there.

5. Where a bill to establish a lost deed alleges, that the then wife of the vendor had therein relinquished her right of dower, the allegation not being admitted, no decree can be made barring her dower, without proof of a substantial compliance with the requirements of the law in existence at the time as to the mode in which *femes covert* should relinquish their dower interests.

Error to the Chancery Court of Mobile. Tried before the Hon. A. Crenshaw, Chancellor.

THE facts of this case are fully set out in the opinion.

HOPKINS & WALKER, for plaintiffs in error:

1. The complainant shows in his bill that he is neither in possession, nor entitled to the possession of the premises, that he has no interest in them, but that the estate belongs to others. For this want of title apparent on the face of the bill, a demurrer lies, or the bill for the want of title to relief, may be dismissed. Story's Eq. Pl. 389; 1 Story's Eq. 101, 102.

2. The only ground of equity stated in the bill arose after the alleged conveyance of the premises by the complainant, and consists of the improvements made by Primrose & Carter upon the premises with the knowledge of G. W. Owen. Of this equity the complainant cannot avail himself on this bill. The complainant does not allege in the bill that he had searched for the supposed deed among his own papers.

3. An affidavit of the loss of the deed, made and filed by the complainant with his bill, was necessary to give jurisdiction to the Court of Chancery, but the complainant has no right to relief, unless he prove, on the hearing, the loss of the deed or the loss was admitted by the answers. 11 Ala. 499, Hooe v. Harrison; 1 Story's Eq. 104; 9 Vesey's Rep. 466. The affidavit is not competent evidence of the loss on the hearing. See authorities last cited. As there was no proof upon the hearing, of the loss of the deed, the bill should have been dismissed. It is alleged in the bill *that the deed was a conveyance of the fee simple with warranty* of title. The only evidence that any deed was made consists of the following statement in the deposition of A. S. Lipscomb, " I believe that I saw titles pass at the same time as the purchase—a fee simple title, with the

*usual warranties.*" The statement of his conclusion is no sub-
stitute for the facts he ought to have alleged, to show Mrs. O.
made the acknowledgment required by law, and the bill is as
fatally defective as if it contained no allegation of any ac-
knowledgment of the deed by Mrs. Owen. 12 Ohio Rep.
377; 7 Ohio Rep. 195; 6 Ohio Rep. 313, 358; 20 Johns. Rep.
301; 4 Serg. & Rawle, 272.

G. N. STEWART, for the defendant:

1. Chancery has jurisdiction to relieve when a deed has
been lost, under head of accident. 1 Story's Eq. 102, § 84; 1
Iredell's Eq. Rep. 252, 268; 1 Devereux's Eq. Rep. 456; 3
Atkyns, 132; 1 Ala. 482; Jeremy's Equity, 359. 2—Chance-
ry has jurisdiction to remove a cloud hanging over an estate.
12 Ala. 734. 3—Also to quiet a title. Hitchcock v. Bank of
the U. States. 4—Also to prevent multiplicity of suits. 3
Stewart, 383, 385-6. 5—And to protect a party against an
impending danger, and to avert loss, by way of preventing
injury which might otherwise happen. 3 Ala. 169; 2 Story's
Equity, 142. 6—A party not immediately interested but hav-
ing an interest which may suffer in future, will be relieved.
1 P. Williams, 731.

2. If even we could not show that any deed had been made,
a complete right in equity is shown to bar the defendants as
heirs of Owen. Sale, payment, and putting into possession,
with valuable improvements, are of themselves sufficient to
bar the defendants as heirs. If they deny these things, they
are proved. If they admit this, and deny making the deed,
still they show they are barred from any claim. If the loss of
the deed only is denied, then the right is admitted, just as if
the deed was not lost. 8—Under the proof, no meritorious
defence or right can in any way be pretended. 3 Stewart,
207, shows that the proof of sale, payment and possession, are
sufficient to maintain a good right.

CHILTON, J.—This suit was commenced by original bill
filed in the Chancery Court of Mobile by James Paul, the
defendant in error, against the plaintiffs in error, in which it is
substantially avered that one George N. Owen, on the 6th of
May 1835, at a sale made by the trustees of a company, known

as the Orange Grove Company, of lots in the city of Mobile, purchased a number of said lots on speculation, among which were lots numbered five and ten, in square numbered two hundred and sixty-one, which are particularly described in the bill : That said Owen held the deed of Calvin Norris and James McGehee, trustees for said company, bearing date the 16th day of May 1835, and duly recorded : That on the 4th day of February 1836, said complainant purchased said two lots of said Owen, at the price of seven thousand dollars, one half of which sum he paid in cash and executed a note for the remaining sum due in ninety days, which he subsequently paid in full : That upon said purchase being made, said Owen caused to be prepared a proper deed of conveyance of said property in fee simple with warranty of title, and did himself sign and seal the same, and did procure his wife to sign and seal it : That the said deed was lawfully acknowledged by said Owen before a Notary Public, and was also acknowledged by Louisa S. Owen, his said wife, separate and apart from her said husband, as the law required, and said deed was certified by said Notary for registration in due form : That said deed was delivered, as also the possession of the lots to the complainant, upon the completion of the payment for the same, said lots then being partly covered with water from the Mobile bay, and requiring great labor and expense by filling up with dirt to render them useful : That shortly after the purchase, complainant re-sold the lots to John G. Aiken, for ten thousand dollars, and on the 7th day of March 1836, conveyed the same to him with warranty of title, and that he re-sold to Sayre, Converse & Co., on the 8th of April 1836, for fifteen thousand dollars, who sold on the 8th July '36, to William D. Primrose for thirty thousand dollars, since which time said lots have been conveyed and mortgaged to divers persons to the complainant unknown : That the possession of the lots were delivered to the respective purchasers, and that while Primrose had the same in possession, he caused them to be filled up, and made other valuable and permanent improvements amounting to about ten thousand dollars, since which time the subsequent purchasers have improved said lots to the extent of some $15,000 : That the possession of the complainant, and those claiming under him, has never

been questioned, controverted or disturbed by said Owen in his life time, nor by his widow, heirs or representatives since his death: That both Owen in his life time, and his widow and heirs since his decease, were fully apprised of the possession, and that said improvements were being made, and acquiesced in the same, well knowing that the property did not belong to them: That upon the execution of the deed by Owen to the complainant, the latter deposited it with the clerk of the County Court of Mobile county for registration, and until a short time before the filing of this bill, he supposed it could be found in said clerk's office, but on diligent search in said office, it could not be found, and he has been unable to find it elsewhere: That said deed is in full force, and complainant has never done any act to impair his right to the same, but is entitled to its custody, and to ask the aid of the court to restore to him the muniment of title which has been lost or mislaid, so that he cannot obtain the same.

The bill further charges, that said Owen died in the fall of 1837, his widow, Louisa S. Owen, and ten infant children, who are named in the bill, surviving: That said children are his devisees and heirs at law, and the said Louisa is the sole administratrix of his estate, all of whom reside in the county of Mobile: That complainant has called on said Louisa, to renew said deed, but she insisted she had no power to bind the infant children, and refused to do any thing in the matter for the relief of the complainant.

The bill prays that said Louisa and the children be made parties defendant: That she discover the books and papers of the decedent, evidencing the transaction, and concludes with the prayer, that the court decree a new deed to be executed to the complainant, securing to him such rights as were secured to him by the said deed above described, or that such decree be made as shall divest the defendants of all title, and bar them, and vest the same in complainant and these claiming under his conveyance, and that his title may be quieted, &c., and for general relief.

To this bill is appended the usual affidavit of the execution of the deed by Owen, its loss, and that it has never been cancelled, released, &c., by complainant.

The widow answered the bill, admitting title in her hus-

band as charged, and admitting his death, but avering a total ignorance of a sale to the complainants, and a want of all re-collection as to the execution of a deed conveying away her right of dower in the premises: Avers that she never knew the complainant until he called on her a few days before the filing of his bill, to make inquiry concerning the subject matter of it: That she has enquired of those familiar with her husband's business, for information as to the alleged sale, and has examined his books and papers for evidence concerning it, but has been unable to arrive at any evidence which throws any light upon the subject. She therefore denies the allega-tions of the bill, and denies also that she had knowledge that improvements were being made on said land, or that defend-ant, or any one claiming under him had possession of the same, until a short time before the bill was filed, she then learn-ed that some improvements had been made by the complain-ant, or some one who held under him. Several witnesses were examined of whose testimony we will speak hereafter.

The chancellor decided that the complainant was entitled to the relief he prayed by his bill, and after decreeing that the proof fully established the sale and execution of the title deed by said Owen in fee simple with covenant of warranty as to title, further decreed that said Paul was entitled to all the rights which said deed did convey to him, and that he be in-vested with all rights and title which said deed did convey to him, and the heirs and legal representative be bound to war-rant the title, as if complainant still had said deed, "and that the complainant be in all things protected by this decree as if said deed were not lost," &c.

1. It is objected to this bill on the part of the plaintiff in er-ror, that the complainant therein does not show a title to the relief which he seeks, not being in possession, nor entitled to the possession, but the estate belonging to others. The com-plainant is bound by his covenant of warranty to protect and defend the title of the persons to whom he sold, and in order effectually to do this, he must have the evidence of his title which he swears is lost. We think the peril to which he is exposed by reason of the loss of the only evidence of title which he held to the lots in question, is sufficient to entitle him to come into this court for the establishment of his title.

He but invokes the exercise of a very salutary jurisdiction which the court of equity possesses of administering preventive justice. 1 Story's Eq. § 84, and note 3. The complainant should not be compelled to wait until he was sued upon his covenants of warranty, or until the heirs of Owen had brought their ejectment against those claiming under him. It is sufficient that he was exposed to such embarrassments in respect to the title, to justify his resort to a court of equity, to remove the cloud which hangs over it. In Burt v. Capely, 12 Ala. Rep. 734, it was held that a party whose deed was lost, might go into chancery to enjoin the judgment creditor of her vendor from selling the land, and this court rendered the injunction perpetual, upon reversing the decree of the chancellor dismissing the bill. The effect of such relief in this case is not only to remove a cloud from the title, and to protect the complainant from impending danger, but it may prevent much litigation in respect to the lots, since the title has passed through the hands of numerous purchasers who are dependent upon the complainant's title for their protection and on failure of which, each must seek his indemnity from the other. We can see no valid objection to the exercise of the jurisdiction, guarded as it is required to be by the oath of the party who makes the application in respect to the loss, and, usually subjecting him to the cost of the proceeding, it is not probable that it would be liable to much abuse.

2. It is insisted that the complainant does not allege he had searched among his own papers for the deed, and that for this reason the bill should have been dismissed. The record does not show that the party had papers among which the deed would be likely to be found, and the complainant avers that his recollection is that he left the instrument in the clerk's office, which has been diligently searched. Besides, it is averred that he caused search to be made in all such places as he supposed it might possibly be found. This is certainly a sufficient averment as to the search, and this objection to the bill is consequently overruled.

3. It is further contended on the part of the plaintiff in error that the evidence in this case does not show either the existence or loss of such a deed as is specified in the bill, and that the affidavit of the loss attached to the bill is not evidence on

Owen et al. v. Paul.

the final hearing of the fact of loss, but that it must be proved by evidence as any other fact. In Hooe v. Harrison, 11 Ala. Rep. 499, it is said that in cases where relief is sought upon a lost instrument, if the loss is not admitted by the answer of the defendant, it must be established at the hearing of the cause by competent and satisfactory proof, and the affidavit of the loss required to be made as a guard upon the preliminary exercise of jurisdiction is not admissible as evidence. 1 Story's Eq. Jurisp. (4th edit.) 106, § 88, and authorities cited in note 2. In Plummer, et al. v. Barkerville, 1 Iredell's Eq. Rep. 252, it was held, that although a court of equity had jurisdiction to set up a lost deed and to decree another conveyance to be made by the bargainer or his legal representatives, yet the plaintiff must clearly prove that such deed once existed, its legal operation and its loss. As respects the proof of loss, it is a fact which from its nature in many cases, is not susceptible of positive proof, but must be arrived at inferentially. The plaintiff could prove that he had the instrument, and that after diligent search he had been unable to find it, but as to proving the manner of the loss, in most cases it would be impracticable, and the law does not require impossibilities. Without attempting to lay down any general rule applicable to all cases, it is sufficient to remark in this case, that as the complainant charges in his bill, that he deposited the deed in the office of the clerk of the County Court for Mobile county for registration, he should have proved, that search had been made for it at least in that office, for aside from all proof on the subject we must presume it is still in the office where, according to his recollection, he left it. Jackson, ex dem. Schuyler v. Russell, 4 Wend. 543; 6 Verm. Rep. 399; 5 Binney, 270. See also the cases collated in 3 Phil. Ev. (C. & H. notes) 1223, et seq. n. 867. In order to prove the loss, the complainant should show that he has used ordinary diligence to procure the instrument by a search where it would be likely to be found. Let us now turn to the proof in respect to the existence and contents of said deed, and see whether the allegations of the bill are sustained.

F. L. Owen, the brother of the deceased, states that while said George W. Owen was Collecter of the Port of Mobile, witness was his deputy, and saw said complainant and Paul

have an interview, but he was engaged and at some little distance from them, so that he cannot speak satisfactorily as to what was said. That after Paul left, the deceased told witness he had sold him some lots, and had received from him a cash payment, which he then held in his hand, being a roll of bank paper; that his said brother's books and papers, had been burned in 1838, or, he has no doubt a full history of the transaction could have been obtained from them. He also proves the note which Paul executed for the payment of the lots, to be in the hand writing of George W. Owen.

Jesse Carter proves, that while Primrose held possession of the lots, he hired carts and purchased dirt from the said George W. Owen to fill up the lots. William D. Primrose understood both from Paul and George W. Owen, that payment had been made in full, for the purchase, but is unable to designate the lots. He also was informed by said Owen that he had made a deed for some lots to Paul, but the character of the deed, or the description of the lots he is unable to give, nor does he know that the widow ever signed the deed or relinquished dower—believes Owen put Paul in possession; frequently saw said Owen present when the lots were being improved by Primrose, and never heard him claim title to the same. John G. Aiken proves that Owen informed him, that Paul had paid him $7000 for the lots, and witness had the information from the same source, that Paul derived title from Owen. Abner S. Lipscomb proves, that Owen was a large purchaser of town lots in Mobile, at a sale made by the Orange Grove Company. He remembers that complainant purchased a lot of ground from George W. Owen, in the year 1836, and paid down half the purchase money and gave his note for the remainder at three or six months. That Owen afterwards told the witness, that he had received the whole of the purchase money, and that Paul had discounted his own note. He also states as follows, "I believe that I saw titles pass at the same time of the purchase—a fee simple title with the usual warranties. I afterwards saw Paul in possession of the lots." Witness recollects the payment the more distinctly from the fact, that Owen afterwards frequently remarked to him, he felt under obligations to him for procuring him so punctual a purchaser.

This is all the testimony which is material in the cause, and

it is too clear to admit of doubt, that it fails to prove the loss of the instrument. Neither is it very satisfactory to show the legal effect of the instrument, as to the character of the warranties. We think however, the chancellor under the proof, was justified in the conclusion, that there did exist a deed with covenant of warranty as to the title, and this is as far as his decree establishes the warranty against the heirs and legal representatives. But there is no proof that any search was ever made for the deed which is avered to have been lost, and consequently no proof of the loss. The decree for this reason, were there no other, cannot be sustained.

4. But there is another and more palpable objection to it, so far as the widow is concerned. The effect of the decree is to bar her right to dower in the land, or any interest in it, whereas there is no proof whatever that she ever, in any manner, relinquished her right to dower, or ever signed the deed which the decree says shall be as operative and effectual as if Paul still had the same. This was manifestly an error. In order to bar the widow of her claim for dower, she must have relinquished it in some mode which the law recognises and will enforce. That the wife was examined touching her execution of the deed, separate and apart from her husband, and acknowledged it, as the bill charges, " according to law," is, although a loose mode of pleading not to be encouraged, in our opinion sufficient to let in proof of the manner of the acknowledgment and examination, no demurrer having been interposed in the court below; but there is a total absence of proof on the subject, and it is perfectly clear that Mrs. Owen's rights could not properly be affected in any way by the proceeding.

According to the allegations of the bill, the deed and acknowledgment in this case were made before the passage of the act of 1839, authorising *femes covert* to bar their right of dower by joining with their husbands in the execution of conveyances, in the presence of two or more credible witnesses, or upon acknowledging the same before some person authorised by law to take the acknowledgment of deeds. The certificate of acknowledgment must then conform to the law as it previously existed, and must have been made upon a *private examination, separate and apart from her husband.* Clay's Dig. 155, § 27. The substantial requirements of this statute must

be complied with.   Agricultural Bank of Miss. et al. v. Rice et al., 4 How. (U. S.) Rep. 225, 236.   Neither the certificate nor deed, if any exist, is before us.   We do not, therefore, desire to go without the case made by the pleadings, to express any opinion in advance, as to their legal effect.   We would, however, observe, that the decision of the Supreme Court of the United States upon the Mississippi statute, which is similar to our own, is, we think, a correct exposition of the law upon this point.   See also Connell v. Connell, 6 Ohio Rep. 358; Brown v. Farran, 3 Ohio Rep. 140; Meddock v. Williams, 12 ib. 377; 7 ib. 195.

The bill shows that a deed, such as the parties agreed upon, was executed by Owen, and delivered to the complainant; jurisdiction cannot be therefore entertained of it, upon the ground of specific performance.   The contract, according to the plaintiff's own showing, has already been specifically executed, and the aid of the court is invoked to supply the loss of the evidence of that execution.   The complainant under this bill cannot have relief predicated upon the ground that no such deed was made.   The proof which entitles the complainant to relief must be such proof as is consistent with and sustains the allegations of the bill.

Decree reversed, and remanded.