## SCOTT AND OTHERS, BY THEIR NEXT FRIEND, v. ABERCROMBIE AND OTHERS.

1. A deed executed by one, in contemplation of his marriage, by which certain slaves are conveyed to trustees, and declaring the following trusts—1. That the trustees shall hold the slaves designated, to the use and behoof of the grantor during his life, and after the determination of that estate, to the use and behoof of the wife, "and her heirs." 2. That the grantor, and "his assigns," shall be permitted "to receive and take the profits to his own proper use, during his life, and from and after the decease of him, the said B. B., to the use and behoof of the said M. P., his said intended wife, and her heirs and assigns forever." 3. That upon the consummation of the marriage, the grantor, during his life, and his wife after his death, might hire out the slaves, reserving the profits to the latter—Held, first, that Mrs. B., the wife, did not take a separate estate in the slaves. Second, that the heirs of Mrs. B. could not take as purchasers under the deed, because the limitation to them, as heirs generally, was too remote. Third, conceding that after the death of Mrs. B., the contingent remainder became operative in favor of her immediate heirs, the descendants of such heirs could not take, as that would be to create an entail.

2. A deed made by the original grantor to his children, by which, reciting the marriage contract, he conveyed to them his interest in the slaves, did not enlarge the operation of the marriage contract.

3. Upon the death of the grandmother of complainants, Mrs. B, whatever interest her children took under the marriage contract, became vested in them, and the marriage contract became powerless for the transmission of a further interest. The grand children not being able to take as purchasers, under the marriage contract, must come in as distributees, asserting a right against the personal representatives of the party, who left a transmissible estate in the slaves.

4. When an estate is in process of settlement in the orphans' court, a court of chancery will not take jurisdiction, and distribute the estate, upon a bill filed for an entirely different purpose.

Error to the Court of Chancery for Macon. Hon. W. W. Mason, Chancellor.

THE bill was filed by the plaintiffs in error, who are infants, and alledges, that on the 28th February, 1794, in the

State of Georgia, one Barrett Brewer, and Melinda Pollard, the grandfather and grandmother of the complainants, in contemplation of a marriage about to be solemnized between them, entered into a marriage contract, which is made an exhibit to the bill. The deed which is executed by Barrett Brewer alone, in consideration of a marriage portion of two hundred pounds, and for that a complete support may be had, and provided, for the said Malinda Pollard, in case the said marriage take effect, and assuring and settling the negroes hereinafter limited, pursuant to, and in consideration of the agreement entered into upon the intended marriage, conveys certain slaves unto William Pollard, sen'r, and Francis Tennille, for the use and trusts following, "to the use and behoof of the said Barret Brewer, from and after the solemnization of the marriage, during the term of his natural life, and from and after the determination of that estate, to the use and behoof of the said Malinda Pollard and her heirs. Yet nevertheless, in trust, to permit the said B. Brewer, and his assigns, to receive and take the profits to his own proper use, and during his natural life; and from and after the decease of him, the said B. Brewer, to the use and behoof of the said Malinda Pollard, his said intended wife, and her heirs and assigns forever; provided also, and it is hereby declared, covenanted, and agreed upon, by and between all, and every the said parties to these presents, and it shall, and may be lawful to, and for, him the said Barrett Brewer, during his life, and after his death for the said Malinda Pollard during her life, in case the intended marriage should take effect, by any writing, or writings, under his or her hands and seals respectively, attested properly and not otherwise, to hire the said negres to any person or persons whatsoever, reserving to the said Malinda Pollard, his intended wife, the profits thereof.

In witness whereof, &c. Signed and sealed by Barrett Brewer.

That the marriage was consumated; that Martha W. Saunders, now the widow of David Saunders, John P. Brewer, and Sarah Scott, mother of complainants, were the only issue of said marriage. That their grandfather died in 1845, their grandmother some years previous. That their mother was first married to one William Hardin, by whom she had

two children, one of whom resides in Autauga, and the residence of the other is unknown. That their mother married in the year 1825 with Benjamin C. Scott, and the complainants are the issue of that marriage. That their mother died in 1836, and their father died in 1844, and letters of administration were granted on his estate to Charles A. Abercrombie, who administered on his estate in Macon county.

That their grandfather, previous to his death, divided the slaves mentioned in the marriage contract, giving one third part to each of his three children, the portion which their father received being accompanied by a deed of gift, which is made an exhibit as follows: "Be it known, that I, Barrett Brewer, of the county and State aforesaid, by virtue of a marriage contract, entered into the 28th February, 1794, by Barrett Brewer, &c., have this day given, granted and confirmed unto Benjamin C. Scott, husband of my daughter Sarah, and their heirs, during my life, and at my decease to be disposed of as pointed out in said marriage contract, the following negroes, viz: Harriet, &c. I do hereby, in terms of the said marriage contract, warrant and defend to the said Benjamin C. Scott, his wife Sarah, and their heirs, during my natural life aforesaid, to their own proper use, and behoof, during the aforesaid period. Signed and sealed."

It is charged in the bill, that the father of complainants accepted the deed, and received possession of the slaves under it. That an arbitration was had, and made between the two first children of their mother, by her first husband, and their father, by which the property was divided between them, which award is made an exhibit, by which certain sums were to be paid to their father, for the excess of their shares, which they insist should now be paid to them. That their father has sold one of the slaves, and her children, to one Neill Ramsay, for $2500, and that the residue of the slaves have been taken possession of by the administrator, as the estate of their father, and refuses to deliver them to complainants. The prayer of the bill is, that the marriage contract be executed, the slaves delivered up to them, &c.

The defendants answered the bill, but as the decision of the court turned entirely upon the legal effect of the marriage contract, and of the deed made by the grandfather, to

the father of the complainants, their answers are unimportant, and unnecessary to be here stated.

The chancellor, at the hearing dismissed the bill, for want of equity, which is the error assigned in this court.

N. W. COCKE and R. DOUGHERTY, for plaintiff in error.

1. The complainants are without remedy at law. In a suit at law against the administrator, Martha W. Saunders, John P. Brewer, Gholson and wife, and Bagby and wife, would be indispensable co-plaintiffs with complainants, and they are parties against whom relief is sought.

2. The validity or invalidity of the marriage contract, is wholly immaterial, except so far as that instrument may be necessary to explain the subsequent deed of gift from Barrett Brewer to Benjamin C. Scott.

3. The marriage contract, if valid, and the deed of gift both created *estates tail*, with contingent remainders to the heirs of Mrs. Brewer. The first, subject to be defeated by a sale by Barrett Brewer, and the last by a sale by Scott, at any time before the contingent estate vested. Price et al. v. Price, 5 Ala. 578.

4. Scott having permitted the contingent estate to vest as to the slaves included in the deed of gift, of which he retained the possession until the death of Barrett Brewer and wife, they would then, if there were no controlling equities in favor of complainants, have vested in all the heirs of Mrs. Brewer, to wit, Martha W. Saunders, John P. Brewer, Gholson and wife, Bagby and Wife, and complainants, the three last occupying the place of the deceased Mrs. Scott.

W. W. McLESTER and G. W. GUNN, for the defendant in error, contended—

1. That the instrument set forth as a marriage settlement is inchoate and void, being an indenture of three parts, and executed but by one. 1 Wash. 47 ; Cline v. Black, 4 McCord's Rep. 431.

2. That if the instrument had been executed, then there is a failure to create any separate estate, and is therefore inoperative. Such estates cannot be created otherwise than by

35

express words, not by implication, and the absolute property vested in Brewer. Barrett v. Barrett, 4 Dess. 448; Inge et al. v. Forrester, 6 Ala. 418; 2 Ala. 152; 8 Por. 72.

3. The property being the absolute property of Brewer, the grandfather of complainants, the same vested absolutely in Scott, the father of complainants, and as such, is subject to administration, and will be subject to distribution between all the children of Scott, no conveyance having been executed by Brewer to Scott, creating a separate estate in his wife. See cases before cited.

4. If the property was delivered by Brewer to Scott, at the death of Brewer, to be distributed as under the marriage settlement, and that is void, and the property absolutely in Brewer, the same may be considered an advancement to Scott in the absence of any evidence creating a separate estate, and is properly controlled by his administrator. Authorities before cited.

5. By the marriage contract in 1794, between Brewer and Pollard, if the same had been executed, there is no limitation to the grandchildren of the wife; if there was, it would be void. 5 Ala. 363.

6. If complainants have any right, they have an adequate remedy at law, and having failed to show any reason why they could not proceed at law, a court of equity will not take jurisdiction.

7. A court of equity will not entertain a bill for distribution of property without administration.

COLLIER, C. J.—The deed executed by Barrett Brewer, in 1794, in contemplation of his marriage with Malinda Pollard, by which certain slaves are conveyed to her father, William Pollard and Francis Tennille, avows the purpose to provide thereby a competent support for his intended wife. It declares the following trusts: 1. That the trustees shall hold the slaves designated, to the use and behoof of the grantor for the term of his life, "and after the determination of that estate," to the use and behoof of the wife, "and her heirs." 2. That Barrett Brewer "and his assigns," shall be permitted "to receive and take the profits to his own proper use during his natural life, and from and after the decease of

him, the said Barrett Brewer, to the use and behoof of the said Malinda Pollard, his said intended wife, and her heirs and assigns forever." 3. It is covenanted and agreed, that upon the consummation of the marriage, Barrett Brewer, during his life, and his wife after his death, by writing under his or her hand and seal respectively, properly attested, might hire the slaves conveyed, reserving the profits therefrom arising to the latter.

It may be conceded that the general intention of the grantor was, to provide a "competent support" for his wife, and that therefore no disposition could be made by him of the slaves, during her life, at least. But if this concession be maintainable, it is obvious, *if the deed is to operate according to its terms*, that the grantor was entitled to the uncontrolable appropriation of the profits derived from the employment of the slaves, unless he should hire them to some third person; in which latter event, the profits were required to be reserved to the wife. It is perfectly certain that these seemingly incongruous provisions did not invest Mrs. Brewer with a separate estate during her husband's life, though they may have entitled her to be supported by the slaves. If she survived her husband, she may have been entitled to them, in preference to the claim of his personal representatives—a question which need not now be considered.

This is perhaps a just analysis of the deed; but whether it is or not, neither the heirs or distributees of the grantor or his wife, derive any rights under it as purchasers. In Darden's adm'r et al. v. Burns's adm'r and another, 6 Ala. Rep. 362, we say, "It is a settled rule of law, that the limitation of personal property, by words which would create an estate tail, if applied to lands, will have the effect to vest the absolute interest in the first taker; because such property cannot be entailed. To sustain this proposition many cases are cited. It is also said, and well supported by citations, that the words "heirs of the body," and "dying without issue," will create an estate tail, unless they are restricted by some expression indicative of an intention that the first estate should cease on the first taker dying without issue at the time of his death. Without such a restriction they were not words of *purchase*, and the limitation would be too remote to take ef-

fect.   See also, McGraw v. Davenport and wife, 6 Port. R. 327.

In Price et al. v. Price, 5 Ala. Rep. 578, the plaintiffs claimed under a deed of gift from the father to his daughter, by which he gave to his married daughter, Polly Woods, a negro woman and her female child, to have and to hold, with their increase, during the life of the daughter, and her husband, Drury Woods, or the survivor of them, and at their death, the slaves to be returned and delivered to the legal heirs of the daughter,  " it being the intention of the instrument to convey a life estate in said slaves, to my said daughter and son-in-law."   Drury Woods and his wife both died without issue, the former having been the survivor, and the question was, whiat estate did he take under the deed. The court state the rule in Shelly's case thus, " Where the ancestor by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs, in *fee* or in *tail*, the terms *heirs* are words of limitation, and not of purchase." We add however, when it is apparent that the words "heirs," or " heirs of the body," are used as descriptive of individuals, and not of the general line of heirs, they are considered words of purchase, and the persons thus designated will take under the first purchaser.   But the words " heirs," or " heirs of the body," when used alone, and without explanation, are always considered as words of limitation, and not words of purchase—that is, if it appears that the donor meant by these terms the *general line of descent from the ancestor*, the rule will prevail, no matter how strong the intention may appear to make them take as purchasers.

The court notice the ancient rule of the common law, that a gift for life carried the entire interest in a chattel, so that no remainder could be limited upon such an estate—state the modification of the law in this respect, and make the following deductions as appropriate to the case.   1. That as the deed does not express the estate to be her *separate use*, the wife did not take an interest distinct from her husband, but the marital rights immediately attach, so as to invest him with the entire life estate.   2. The donor intended that the person or persons who might be the heir or heirs of the wife,

at her death, should take the estate in remainder, both as heirs and purchasers—an intention which the law would not enforce. 3. That the legal effect of the deed did not give to the wife alone, or conjointly with her husband, during his life, any interest, but granted to her heirs a contingent, instead of a vested remainder, which the husband might have destroyed by a sale of the slaves before the death of the wife —the contingency upon which it was to vest. But as he made no disposition of them previous to that event, the remainder became vested, and the intention of the donor effectual.

Now conceding, in the case at bar, that Barrett Brewer took an exclusive life estate, and his wife a remainder for her life if she survived him, yet the attempt to perpetuate the interest in the heirs of the latter, cannot be supported. The authorities cited are explicit, and show that the limitation is too remote. Admitting however, that the death of Mrs. Brewer, removed her remainder for life, and gave to the contingent and inoperative remainder to *her heirs* vitality, which the law would acknowledge and protect, and it cannot then be maintained, that the descendants of her *immediate heirs*, can, under the general designation employed, assert a title under the deed of her husband. Such an assumption can only be supported upon the ground that limitation may succeed limitation of personal estate, so as to entail it—a doctrine which the legislature have denounced, and which the common law does not sanction. Clay's Dig. 157, § 37. If the case then rested alone upon the effect of the deed we have considered, the view taken would be decisive against the complainants' right to recover, as they claim as children of a daughter of the grantor and his wife Malinda, and cannot take in virtue of the deed immediately from the latter.

In addition, however, to the deed we have noticed, the complainants place their right to relief upon a deed made by Barrett Brewer in the State of Georgia in 1830, which the former refers to and designates as a marriage contract. The latter deed declares that in virtue of that of 1794, the grantor had given, granted and confirmed to Benjamin C. Scott, husband of his daughter Sarah Ward, and their heirs during his life, and at the death of the grantor " to be disposed of as

pointed out by said marriage contract," the slaves now in controversy. The deed then concludes with a provision as follows: "I do hereby, in terms of the aforesaid marriage contract, warrant and defend to the said Benjamin C. Scott, his wife Sarah, and their heirs, during my natural life as aforesaid, to their own proper use, benefit and behoof during the aforesaid period," the slaves given to them.

We infer from the terms of this deed, that Barrett Brewer supposed that he had only a life estate in the slaves, and that his intention was to relinquish immediately that estate to the children of his wife, to which, upon his death, they would have succeeded. This is indicated not only by the deed to Scott and wife, but by the distribution which the bill alledges he made of the other slaves to the other children of himself and wife. We need not inquire whether it was competent for the donor to have conveyed a greater interest than he attempted, and secured the slaves to the complainants; the reference to the "marriage contract" was merely designed to indicate the intention that the slaves should be disposed of after his death according to its provisions, and could not enlarge the scope of its operation.

If the case of Price et al. v. Price is to be followed, it is clear that upon the death of Mrs. Brewer in 1827, the remainder in favor of her children became vested, unless the interposition of her life estate between that remainder and her husband's death, requires the application of a different rule, than that here recognized. Upon the assumption that the remainder vested, the complainant's mother might perhaps have taken under the deed of 1794, but we have seen that however this may be, they cannot claim as purchasers under that deed. Whenever the right of their mother attached, (if she had any,) the deed became powerless for the transmission of a further interest. So, if the life estate secured to Barrett Brewer, gave him an unlimited legal title, irrespective of the interests professedly provided for the wife and her heirs," then if the estate of B. C. Scott determined with the life of his father-in-law, the plaintiffs must claim through their mother, who was the daughter of the latter, and died in 1836 or 1837, while he was still in life. In neither event can they be regarded as purchasers under the

deeds of 1794 and 1830; but must come in as distributees asserting a right against the personal representatives of the party who left a transmissible estate in the slaves.

In this aspect of the case, the bill is not so framed, as to authorize the relief which the complainants seek; for even admitting that it is allowable for chancery to exercise a general primary jurisdiction for the purpose of coercing the settlement and distribution of estates over which the jurisdiction of the orphans' court is unquestionable and ample, it should at least appear that the estate is in a condition to be distributed. It is not pretended that the administrator of B. C. Scott has not given sufficient security, that he has been faithless to his trust, or that the estate committed to his charge is likely to suffer from waste or other cause.

If the orphans' court is incompetent to give effect to the distribution of the slaves made by Barrett Brewer, or afterwards by arbitrators selected for that purpose, the powers of chancery would authorize it to administer complete justice to the plaintiffs.

In this cause we have cautiously avoided incidently deciding questions which presented themselves as we argued to a conclusion, and have merely determined that the complainants have no title but as distributees of their father or mother. Which of these they must immediately claim under, we need not determine; for be this as it may, the decree must be affirmed.

CHILTON, J., not sitting.