## PHARIS ET AL. *vs.* LEACHMAN, ADM'R. ET AL.

1. The general rule is, that to entitle a creditor to the assistance of chancery upon an allegation of fraud in his debtor, he must stand as a creditor with a lien, or as one who has exhausted his legal remedies.

2. But this rule does not apply to administrations, in relation to which Courts of Chancery have jurisdiction over estates, in the direction and control of executors and administrators, and in protecting the rights of creditors generally, as well as in decreeing distribution of assets, by virtue of their original powers.

3. The settlement of an administration, which has been commenced in the Orphans' Court, may be withdrawn from that tribunal, and taken into a Court of Chancery, whenever the powers of the former court are inadequate to the exigency, and cannot afford a sufficient remedy.

4. Where a bill is filed by a creditor to pursue certain real and personal property, which is standing in the name of a trustee for the wife and children of the debtor, and which the bill alleges was fraudulently added to their estate by the debtor, and the debtor's estate has been reported insolvent, chancery may take jurisdiction of the case, and withdraw the administration from the Court of Probate.

5. And in such case, the administrator of the debtor is a proper party defendant to the bill.

6. Where the defendants claim the benefit of the statute of non-claim by way of plea, but do not positively deny in their answers the presentation of complainant's demand, proof of presentation by one witness is sufficient.

7. In a suit against an administrator, his admissions of the presentation of the demand are sufficient to take the case out of the statute of non-claim, although such admissions are made after the lapse of eighteen months from the grant of letters of administration.

8. Where the suit is in chancery, for the purpose of subjecting to the payment of the intestate's debts, property which is standing in the name of a trustee for the benefit of his wife and children, and which is alleged to have been purchased

by the intestate with his individual means, and fraudulently added to the trust estate, the admission by the administrator of the presentation of the complainant's demand is evidence, not only against the administrator, but also against the *cestuis que trust.*

9. A payment on a claim, made by the administrator after the lapse of eighteen months from the grant of letters of administration, is a fact tending to establish its due presentation within eighteen months.

10. The report of insolvency made by the administrator after the lapse of eighteen months from the grant of letters, in which he has returned a claim as a subsisting debt against the estate, is evidence of its due presentation.

11. When a statement contained in an answer, of a material fact within the respondent's knowledge, is disproved, the answer loses its weight as evidence.

12. The continuous possession for five years by the husband, of slaves placed in his possession by his father-in-law, is sufficient, unless rebutted by satisfactory proof, to raise the presumption of a gift.

13. Although the borrower may have had the continuous possession of slaves for more than three years, without the registration required by the second section of the statute of frauds, yet if the owner resumes the possession of them before a creditor acquires a lien upon them, they cannot be subjected to the payment of the borrower's debts.

14. A lien lost or destroyed is the same as if it had never existed.

15. Although the trustee's estate, after his death, is responsible to the *cestuis que trust* for the trust funds received by him, yet no lien accrues in their favor upon property purchased by him during his life, when no portion of the trust fund can be traced into such purchase.

16. Where a husband purchases property with his individual means, and takes the title in the name of himself as trustee for his wife and children, such property will be subjected to the payment of his debts, on a deficiency of other assets; and in such case his personal representative must account for the rents and profits of the real property, and the hire of the personal property, from the service of the bill, if necessary to supply the deficiency.

17. Where a receipt, which is given for a claim on a third person, expresses on its face that the claim is to be placed to the credit of a judgment, the presumption is that the claim is received as an absolute payment of the judgment *pro tanto;* and this presumption is not rebutted by proof that such third person was insolvent at the time, and that no portion of the claim could have been collected from him.

18. Where a debtor sells to his judgment creditor, at a stipulated price, certain slaves to which he has no title, with the understanding and agreement that the price is to be credited on the judgment, unless the title should prove bad and the slaves be lost to the creditor, in which event only the hire for the time during which they remained in the creditor's possession was to be credited on the judgment, and the slaves are afterwards recovered from the creditor in an action of trover by the legal owner, together with damages from the time when he acquired them, the debtor is not entitled to a credit for the hire.

19. Where slaves are bequeathed to a married woman and her children, and the will provides that the slaves shall be placed in the hands of a trustee, for her own use and the use of her children, and that no person shall deprive them of the same or any part thereof, and the slaves remain about the house, and in the possession of the husband and wife and their children, the condition of the trust is fulfilled, and the husband is not accountable for hire.

20. The widow is entitled to the dwelling house in which her husband resided at the time of his death, free of rent, until her dower is assigned. (Clay's Digest, 173, § 7.)

ERROR to the Chancery Court of Greene.

Tried before the Hon. W. W. Mason.

This bill was filed by a creditor of Charles L. Roberts, on behalf of himself and the other creditors of said Roberts, to subject to the payment of his debts certain real and personal property which, it is alleged, was purchased by said Roberts in his lifetime, and the real estate improved, with the individual funds of said Roberts, and the titles taken in the name of a trustee for the use and benefit of his wife and children, who were the *cestuis que trust* of a trust estate created by the will of Woodliff Bevell, the father of Mrs. Roberts. The bill also makes a demand upon a family of slaves, which, it is alleged, were the property of said Roberts by gift to his wife from said Woodliff Bevell, and which are also alleged to have been fraudulently included in the trust estate.

The complainant's demand is based upon two judgments, which he obtained against Roberts in his lifetime, and on which executions had been issued, and returned " no property found," but the executions were not renewed at any time within two years before the death of Roberts. It does not appear that any other proceedings were instituted, by way of having the claims allowed against the estate. The bill charges that the claims were presented to the administrator, within eighteen months after the grant of letters, and that the estate has been reported insolvent by the administrator.

As connected with his demands, the complainant charges that Roberts sold him two slaves, at a stipulated price, which were to go in part payment of the judgments; and upon the further agreement, that if Roberts had not a good title to the slaves, and they were lost to the complainant, then the amount stipulated to be paid for them was not to be credited on the judgments, but in such case, the hire of the slaves during the time complainant had them was to be allowed as a credit on the judgments; that a suit was instituted against the complainant, for the conversion of the slaves, by the trustee of Mrs. Roberts, and damages were recovered to the amount of

their value, and also interest on their estimated value from the day of sale. The bill prays that, in taking an account of what is due upon the judgments, a credit for the hire of the slaves should not be allowed.

The complainant also seeks to avoid a credit on his judgments for a claim on one Wm. M. Inge, which was received by complainant's attorneys from Roberts, and a receipt therefor given, expressing on its face that the amount was to be credited on the judgments. This credit it is insisted should not be allowed, on the ground that said claim was not, as expressed in the receipt, to be taken as an absolute payment, but was only to be credited on the judgments in the event of its collection, and that, on account of the insolvency of Inge, nothing could have been, nor has been, collected on it.

The administrator of Roberts, as such, the trustees and *cestuis que trust*, are made defendants to the bill. The answers of Leachman and Mrs. Roberts admit the complainant's claim, and also the purchases, which are set out in the bill; but they deny that the purchases were made with the individual means of Roberts, and insist that the purchases, as well as the improvements of the real estate, were made with the trust funds, or with money raised upon the faith of the trust funds, and for the benefit of the trust estate. The alleged gift of the slaves by Woodliff Bevell is also denied, and the charges of fraud. The credits, already referred to, are insisted on, and the statute of non-claim is set up, by way of plea, to the complainant's demands.

It is unnecessary here to state the evidence, as upon the facts in controversy it is set out in the opinion of the court. The case was submitted to the chancellor upon the bill, answers, evidence, &c. and a decree was rendered dismissing the bill, upon the ground that the evidence did not establish a presentation of the complainant's demand to the administrator within eighteen months after the grant of letters; and from this decree the complainant prosecutes a writ of error.

J. B. CLARKE and R. H. SMITH, for plaintiff in error:

I. As to the jurisdiction of the Court of Chancery. In the exercise of its original powers, which remain unimpaired by statutory inhibition, the Courts of Chancery have jurisdiction

42

over estates, in the direction and control of executors and administrators, and in protecting the rights of creditors, as well as decreeing distribution of the assets. In all cases, where trusts are to be executed, or a discovery of assets is wanted, the powers of the Orphans' Court being inadequate to afford the necessary relief, chancery will take jurisdiction; and courts of equity will not enumerate the cases, in which upon a suggestion of fraud, they will take jurisdiction. Executors and administrators are almost in every respect considered in equity as trustees. Dement v. Boggess, 13 Ala. 143; Horton v. Moseley, 17 ib. 796; Blakey v. Blakey, 9 ib. 394; Leavens v. Butler, 8 Porter, 396; Kennedy v. Kennedy, 2 Ala. 572.

The objection that the complainant is not a *creditor with a lien,* cannot prevail in a case like this, if at all. A creditor with a lien may come into chancery, to remove a cloud on the title, and thus reap the full effect of his lien. A creditor who has reduced his demand to judgment, and had execution returned " no property found," may come into chancery to subject equitable assets. He comes in, not because *he has a lien,* but because he has, by a return of process, shown that there is nothing on which he can get a lien, and because there are *equitable assets,* which may be subjected. His lien, in such case, does not relate to his legal process, but begins from the filing of his bill, and the creditor who first files his bill, has the first lien. Legal process is no lien upon equitable assets. Beck v. Burdett, 1 Paige, 309; Edmondson v. Lyde, ib. 639 ; 2 Blackf. 356.

The doctrine of a creditor's right to file his bill, to obtain satisfaction of his debt, fruitlessly prosecuted at law, has no application to a party standing in the light of a beneficiary seeking to hold a trustee to account. The former invokes an extraordinary power of the court; the latter, the ordinary, original, inherent power. The doctrine, if applicable to this case, would prove too much; it would show that this property is entirely beyond the reach of creditors. Thus: The administrator cannot touch it, *as administrator,* being bound by the fraud of his intestate; it cannot be reached by *scire facias* against the heirs, for the heirs do not take it *as heirs,* but as *fraudulent purchasers ;* without it, the estate is insolvent, and

the creditor can only get a decree for his distributive share of the assets, without any lien, or any process to reach this property.

II. We insist, that the trust property is held by Leachman, under a fraudulent investment by Roberts, not as administrator, but as executor *de son tort*. The bill does not call him executor *de son tort*, but it sets out all the facts necessary to show his liability to account as such, and this is sufficient. There is no form absolutely necessary to a bill in chancery. That the creditors may subject the property, and that the proper remedy is, to hold the fraudulent grantee liable as executor *de son tort*, see Osborne v. Moss, 7 Johns. 161; Roden v. Murphy, 10 Ala. 804; Densler v. Edwards, 5 ib. 31.

The attempt to charge Roberts with hire for the negroes cannot be allowed; in serving the family of Roberts as domestics they were employed strictly in accordance with Mr. Bevell's will.

As to the two slaves sent to Roberts by Mr. Bevell, and remaining in possession, the evidence of Thomas L. Bevell proves them to have been given to Charles Roberts; but even if loaned, Roberts retained them more than three years, and they became liable to his debts under the statute of frauds.

It will avail nothing that no conveyance proceeds from Roberts; it is the same thing that he procures it made, he paying the consideration. It is a fraudulent gift by him to his wife and children, void as to creditors.

It has been said, if this property be subjected, 'the trust fund should first be raised from it; but it was bought and paid for before the trust fund accrued; again, $2320.87 of this has never been expended, which deducted from $3054, (the whole fund) leaves only $733.13 of it ever expended in any manner by Roberts. But the reverse of the principle contended for is true, if the trust fund partly paid for the property, to wit: that our money (Roberts' money) will be raised from the property. Hoot v. Sorrell, 11 Ala. 386.

III. As to the statute of non-claim. Defendants Leachman and Mrs. Roberts plead statute of non-claim, and answer in effect that they do not believe or remember that the claims were presented. It is not denied but that the admission by the administrator, made within eighteen months from grant of

668 ALABAMA.

Pharis et al. v. Leachman. Adm'r., et al.

letters, is good evidence against him of presentation. But it is insisted that such admission made after the eighteen months is inadmissible. By the deposition of Clarke, and by the fact of payments within the eighteen months, the presentation is proven. A payment necessarily comprehends a demand. It is the result, the fruit of a demand, and the judgments may be treated all as one debt, the notes on which they were rendered being parts of the same debt. Admitting, however, that each was a different debt, the payments not being directed in their application, the creditor was left to apply as he pleased, or they will be applied to all equally. It is not to be credited that these payments were made without knowledge or regard as to how, on what, &c., they were to go.

The return of insolvency by the administrator, his payments subsequent to the eighteen months, and after the filing of the bill and service on him, establish the fact of presentation, especially when we remember that his return of insolvency had to set forth the "subsisting debts," the character of the debts, the amount of each, and the residences of the creditors. This return was an official act, under oath; an oath, upon the truth of which, depended the course the whole subsequent administration would take. But it is objected, first, that the admissions of the administrator, made after eighteen months, cannot be given in evidence; and, secondly, that no admissions of his are good against Mrs. Roberts and children, and especially as respects the realty.

The first part of the proposition is erroneously supposed to be sustained by Br. Bank at Decatur v. Hawkins, 12 Ala. 755. In this case the non-presentation was established, and the question was could the bar be removed by a subsequent promise; in the case at bar, the acknowledgment is only used as evidence of a previous presentation, not to revive a claim proven to be barred. The case cited has no analogy therefore to the question presented. None of the cases relied on by the defendant to sustain this position, do sustain it, and discarding the casual remarks of the judges, do not prove it. Gorman v. Nairne, 12 Ala. 338, only holds, that an administrator paying a claim and taking a refunding obligation to repay if it should not be made good, can recover back the money, it being judically decided by the proper forum that

the claim was barred. Thrash v. Sumalt, 5 Ala. 18–21, simply holds, that the statute runs from grant of letters, without regard to publication. Jones' Ex'ors v. Lightfoot, 10 Ala. 24, (in which stronger language is used than in any other case, and from which the court receded in Hallett & Walker v. Branch Bank of Mobile, 12 Ala. 193,) that simply knowledge of the existence of a claim by the representative, is insufficient to save the bar of the statute. Boggs' Adm'r v. Branch Bank at Mobile, 10 Ala. 975, holds a judgment vacated and the suit abandoned, is not sufficient presentation. Hallett & Walker v. Branch Bank at Mobile, 12 Ala. 193, reduces to certainty the hitherto loose expressions, that there must be a presentation or "something equivalent thereto;" determines that notice of non-payment, &c. of a note or bill given by a notary is a good presentation, and that any evidence which will satisfy a jury, will suffice to satisfy the demands of the statute; in this respect, following the ruling of Mississippi, as shown by the authority cited in the opinion.

The personal representative is the person, and the only person, authorized by law to receive presentation. He may mark on a claim "presented," but cannot be compelled to do it. Witnesses to the fact may die or remove, and yet the proposition extends to this, that by no means can you use his admissions, made at any time, against the heirs, and cannot use those made after the lapse of eighteen months against him. This would, by judicial legislation, strip the creditor of the right to a discovery from him, and render nugatory an admission in an answer in chancery.

The admissions, whether made before or after the eighteen months, are not conclusive, but admissible evidence, not only against him, but against all, for whom and in respect to whom he acts, to wit: his successor, the distributees and creditors. He is their trustee as to this, and his acts and admissions are good against them. Starke & Moore v. Keenan's Ex'ors, 5 Ala. 590. This case not only holds that the admissions of the representative are evidence, but that they may be given against his successor, whose office is distinct and separate from his. Lambeth v. Garber, 6 Ala. 870. The case of Bond v. Smith, 8 Ala. 386, relied on by defendant, only holds that the heirs may, when in adverse position to the representative,

invoke the statute of limitation, and does not militate against our position.

. But as to the property admitted by Leachman to be in his hands, being administered, he is the only party to litigate; as to the other, there are no heirs or devisees, but fraudulent purchasers. If the trust funds can be reached at all, it must be on the ground of a fraudulent gift to Roberts' wife and children, and it never was the design or policy of the statute to protect such.

IV. They cannot invoke the statute. This will be obvious from a consideration of its nature and design. By its language it begins to run only from the grant of letters; its action extends to matters which, under letters, are to be or may be administered, at farthest only to an estate which may descend. It is the forerunner, if I may so speak, of a close of the administration, its object is to promote that end. It is a mere bar of remedy. Doe ex dem. Duvall's Heirs v. McLoskey, 1 Ala.; Inge et al. v. Boardman, 2 Ala. It applies not only simply to such estate as may be administered, but to one who may administer it under authority of full letters. Erwin v. Branch Bank at Mobile, 14 Ala. 307 ; Lowe's Ad'mr v. Jones, 15 Ala. 545. It is in short, a statutory bar, which is a mere adjunct to the administration provided by law, arising with, running with, confined to and dependent upon it, and has no more application to an executor *de son tort*, than have the other statutory regulations providing for and directing the administration of estates, such as obtaining orders to sell real estate, reporting the estate insolvent, &c. &c. In this respect it has no analogy to the general statute of limitations, for that is in nowise dependent on the grant of letters.

JOHN A. CAMPBELL and S. F. HALE, *contra:*

1. Has the plaintiff a standing in court? It is admitted that he has done nothing since the death of Roberts to revive his judgments, or to ascertain the value of his legal remedies. The lien upon the land, and of his executions, has been lost by this event. 15 Ala. Rep. 282; 13 ib. 167.

It will be admitted that, as a general rule, a party cannot proceed in equity to subject property conveyed by a debtor upon the allegation of fraud, unless the party has exhausted

his legal remedies. If, from any cause, the right to issue an execution has been lost, he must place himself in a condition to be able to exert that right, before a bill will lie. 1 Barb. Ch. R. 589; 11 S. & M. 366; 12 ib. 547. The question then arises, is there an exception in favor of creditors of decedents? One authority asserts there is, 2 Blackford, 421.

The case, it will be seen, is peculiar. No administration, no personal estate, a *single* parcel of property fraudulently conveyed.

The case which is referred to to sustain the general proposition has no analogy to the case before the court, and does not support that adjudication. The case in 4 John. Ch. R. 619, was the case of a judgment and execution against a surviving partner, without fruit to the creditor; a solvent estate of the deceased partner, and a liability of that estate by contract to hold the surviving partner harmless. It is obvious that there were two distinct grounds for equitable interference; the liability in equity of the deceased partner's separate estate, for the debts of the insolvent partnership, and the express liability arising on the contract of indemnity.

There was also a general jurisdiction in Great Britain over executors and administrators as trustees, and estates might be administered there through the Court of Chancery. This case, then, does not show that creditors without a judgment or the exhaustion of their remedies, can impeach the transactions of the decedent for fraud. Adams on Equity, 257.

The case came before the Court of Appeals in South Carolina, 1 Hill, 297, 301. The principle for which we contend is there plainly admitted. There, the court held that the ascertainment of the debt as a charge upon the estate, in some legal proceeding, was essential. 3 Barb. Ch. R. 427.

The importance of this principle is shown in this case. One of the important issues in this case is, whether the plaintiff has a claim against the estate. This brings us to consider the plea of the defendants. The plaintiff files his bill, to compel the surrender of property by Leachman and the widow and children of Roberts, for the purpose *of the administration* of the estate of Roberts, and to *the benefit* of his creditors. We say, first, that the plaintiff should have had his debt allowed in the Probate Court, before he could commence this proceed-

ing. This point has been discussed, but if that is not conceded, his bill requires him to establish a valid claim upon the assets of Roberts. He must be a creditor with *a lien* on the estate, fully ascertained, before he can impeach the acts of Roberts. 13 Ala. Rep. 167, before cited.

The question then is, is there a valid claim? Leachman has pleaded the statute of non-claim, which, if true, must exclude the plaintiff from any share of the fund. The question is, has this plea been disproved. The only witness who seeks to disprove this plea is the *attorney* of the plaintiff.

The admission of Leachman, after the expiration of eighteen months, would not be evidence against the widow and children of Roberts. 2 Barr 112; 1 Russ. & M. 347; 5 Pickering Rep. 139; 4 Har. & J. 270. After the eighteen months have expired, the authority of an executor or administrator to make admissions *unfavorable* to the heir, has terminated; all claims not then presented are barred by the express language of the act. To allow the administrator by an admission, after that time, to affect the estate, would superinduce fraud and collusion. An agent's admission after his authority has terminated, or otherwise than in the current course of business, is inadmissible. The admission of a partner after the dissolution of the partnership, does not bind. So, after the power to receive claims under the statute of non-claim has expired, the executor or administrator has no power to make an admission which will bind any other party in interest.

In this point of view, then, the evidence of Clark would not only be insufficient, but be inadmissible. In no event could it countervail the direct denial of the answers.

The other ground relied on, is the payment by Leachman to Murphy & Jones of a part of the debt, before the expiration of the eighteen months. A part payment will take a case from the operation of the statute of limitations, and is evidence of a *waiver* of notice of non-payment of a note.

Neither of these cases, however, is analogous to the statute of *non-claim*. That statute is an *imperative* statute, imposing a condition upon the creditor without which his claim against the estate of a decedent is barred. Its provisions were designed to secure all persons interested in the estate, and they cannot be *waived* or nullified by the act of any one

party in interest. The statute admits of no substitute for its requirements. They are plain and direct, and must be literally pursued. The act of Mississippi has been construed to be a statute of limitations. We have resolutely refused to adopt that construction, or to impair the vigor and energy of the statute. 10 Ala. Rep. 17 ; 12 ib. 193 ; 8 ib. 454 ; 15 Mass. 122, 264.

Such being, then, the legal effect of the pleading and evidence, it is apparent the plaintiff has not made a case which entitles him as a *general creditor* to come into chancery, even though the court should hold that a *general* creditor could do so. But we apprehend, that when the cases are considered, it will be found that such a general creditor could not file a bill of this description. 8 Ala. Rep. 866 ; 12 ib. 499.

The question now arises, can the plaintiff recover upon the case made by the bill ? It will be seen there is no averment of the insolvency of the administrator or his sureties. 16 Ala. Rep. 548. If Leachman has failed in his duty as administrator, he is liable as such. He is entitled, in the first instance, to pass upon the rights of the *estate*, and his judgment cannot be overruled or annulled, except by proof of fraud and collusion, and upon an allegation of malfeasance and insolvency, sustained by proof.

The demand upon the trust property consists of a claim for the slaves Abby and her children, who were sent with Roberts to Erie, in 1832. Three witnesses testify upon the subject of the original transaction. These are the children of Woodliffe Beville. Two of these children sustain the strong and direct averments of the answer of Mrs. Roberts. This answer is in direct response to the allegations of the bill, and the demand for discovery contained in the interrogatories. The *answer* is of facts within the knowledge of the party answering, and there is no witness to contradict it. The evidence of Richard Roberts is express, that in 1837 they went into the control of Thomas L. Beville, as a part of the estate. In 1839, in February, they were divided as a part of Woodliff Beville's estate.

The witness before mentioned speaks of continued absences, at the pleasure of Woodliff Beville.

It is also in proof, that Roberts, at the time of his marriage,

was poor and in debt. The facts of possession and control, testified to by other witnesses, are harmonious with this testimony. Every slave on one's plantation must be held and treated as such. The white man in possession must act as a master; and the nature of the right to a slave can never be inferred from the quality of the acts of control and ownership that may be exercised over him.

We find that possession was interrupted frequently, and the quality of the title permanently declared in 1837, with the assent of Roberts.

The plaintiff can claim nothing by the statute of frauds. All the *liens* of the plaintiff expired with his executions returned "no property found," and the failure to renew them. The permanent return of the possession of the slaves, in harmony with the title of Woodliff Beville, and in contradiction to any apparent right of Roberts, had taken place long before the death of Roberts, and was held at a time under that title when no lien of the creditors existed. The construction of the statute of frauds has very properly been made by the Supreme Court. That construction is, that the *property remains with the title, and not with the possession;* unless three years of continuous and undisturbed possession has remained with the debtor prior to the existence and enforcement of a lien created by the law. If the lien is destroyed, or is not pursued, the owner of the property may resume the possession, and will be protected in the property. 12 Ala. Rep. 499; 17 Ala. Rep. 280.

This statute is in a high degree favorable to creditors, and penal upon the rights of holders of property under a *bona fide* title. It confiscates the *right* in favor of a creditor, upon a very doubtful conclusion that he may have been injured by equivocal evidence of title permitted to his debtor. The court certainly should not extend the statute to cases not clearly within it. In this case, the proof strongly indicates that the plaintiff could not have been imposed on by such *indicia.*

The other items consist of the purchase of lands of Foster, and the exchanges and improvements on Gullett's land and certain slaves of Giles.

. The plaintiff has no right to treat these purchases as prop-

erty of Roberts. The only claim would be in favor of the estate of Roberts, upon the trustee, for moneys advanced for it.

Before the plaintiff could be entitled to claim this amount, he should have established his right in the Probate Court, or by a revivor of his suits, and then he might have been in a condition to sue.

The plaintiff has no right to enjoin the proceedings in the courts of Sumter county. It is apparent that a trustee cannot sell the slaves of the *estate* to pay his own debt. The sale then to the plaintiff was voidable by the *cestuis que* trust. Nor have the creditors at large, who are parties in common with Pharis, an interest to stop the proceedings. The claim is an individual claim of the trust estate upon Pharis, a *mala fide* holder of property belonging to it.

Neither have the creditors any equity to interrupt the proceedings of Gullett. Gullett made a fair exchange of property with the trustee, and the *cestuis que* trust are willing to affirm it. On the part of Gullett, the contract has been executed. He is entitled to the land, and the creditors have no lien or right to hinder the fulfilment of the contract. In conclusion, we insist, 1st. that the plaintiff is not entitled to file this bill; 2d. that the case made by it is not one entitled to relief; 3d. that the debt of the plaintiff, as a valid and subsisting debt, has not been established.

GOLDTHWAITE, J.—The bill is filed by a creditor of Charles L. Roberts, on behalf of himself and other creditors, to obtain administration of the legal assets of the estate, and also to subject to the payment of the debts of the estate, certain real and personal property, which, it is alleged, have been fraudulently added to the trust property of the widow and children. The complainant is not a creditor with a lien ; but the bill shows a judgment against the intestate, an execution and return of "no property" during his life, and a report of insolvency by his administrator. The administrator of Roberts, who is also the trustee, and the widow and children, who are the *cestuis que trust*, are with, others, made defendants to the bill.

The first question presented in the argument is, as to the

right of the complainant, upon the case made by his bill, to come into a court of equity. It may be conceded, that ordinarily a creditor, to entitle himself to the assistance of the Court of Chancery upon an allegation of fraud in the debtor, must stand as a creditor with a lien, in which case the obstacle which prevents its enforcement will be removed, and the path left clear; (Planter's & Merchant's Bank v. Walker, 7 Ala. 928; Dargan v. Waring, 11 Ala. 988;) or as one who has exhausted his legal remedies, without being able to obtain satisfaction of his debt, the end which it was the object of those remedies to accomplish. Hadden v. Spadder, 20 John. 554; Beck v. Burdet, 1 Paige, 368; Roper v. McCook, 7 Ala. 319.

In the one case, a judgment binding the realty, or the issue and delivery to the officer of an execution binding the personal property, must be shown; and in the other, the prosecution of the debt to judgment, issue of execution and return of no property. The application of these rules, however, belongs to the relation of debtor and creditor *purely*, and while this relation exists in the present case, it is found in connection with other circumstances, which are of themselves sufficient to authorize the interposition of a Court of Chancery. In other words, the creditor in the present case asserts his right to the aid of that court, not merely because he is a creditor, but for the additional reason, that his claim is connected with matters of administration which render the interference of Chancery indispensable. The equity of the complainant, therefore, depends upon considerations applicable to the jurisdiction of Chancery in relation to administrations, rather than those which apply to the simple relation of debtor and creditor.

Upon this branch of Chancery jurisdiction, while we incline to the opinion that it would be necessary to reduce to judgment a claim sounding in damages merely, it is certainly true that in England, for upwards of a century, creditors without a lien, without even having obtained a judgment, have maintained their bills against executors and administrators, for discovery and account of assets, and satisfaction of their debts. Joseph v. Mott, Pre. in Ch. 77; Davison v. The Earl of Oxford, 3 P. Williams 401; In the matter of Sir Charles Cox, 3 P. Williams, 341. In this State we do not find that

the point here raised has been expressly decided; but the jurisdiction of equity over executors and administrators, for the protection of creditors, upon considerations which apply with the same force to general creditors, as to those with a lien, or those who have exhausted their legal remedies, has frequently been sustained. Thus, in Kennedy v. Kennedy, 2 Ala. 572, the jurisdiction of equity, in compelling executors to apply the property of their testator to the payment of debts and legacies, is based upon their character as trustees in that court. In Blakey v. Blakey, 9 Ala. 394, the jurisdiction is rested upon the double ground of the fiduciary relation of administrators, and the inadequacy of the powers of the Orphans' Court to afford a discovery of assets. In Dement v. Boggess, 13 Ala. 143, the court asserts, as a clear legal proposition, that courts of Chancery have jurisdiction over estates in the direction and control of executors and administrators, and in protecting the rights of creditors, as well as decreeing distribution of assets, by virtue of its original powers, which remain unimpaired by statutory inhibition. Again: in Hunley v. Mosely, 17 Ala. 796, Mr. Justice Parsons, in delivering the opinion of the court, says: "It therefore follows that a court of equity may restrain the Orphans' Court, from proceeding to a final settlement, when it is necessary that matters purely of equitable cognizance should be adjudicated and ascertained, in order to reach the end of justice."

The principle to be extracted from the decisions to which we have referred is, that the jurisdiction of courts of equity in matters of administration, in relation to the enforcement of claims of creditors and the distribution of assets, is sustained upon considerations essentially distinct from those which influence such courts in affording assistance to creditors whose demands are not connected with administrations. In the one case the jurisdiction is original and primary, resting upon its general powers in relation to the settlement of estates; in the other, it is ancillary, or in aid of the legal tribunals whose powers are found inadequate to the emergency.

A Court of Chancery having jurisdiction of the subject matter, it remains only, as to the question now under consideration, to inquire whether the facts disclosed by the bill, are sufficient to authorize the withdrawal of the administration

from a court of concurrent jurisdiction, in which the proceedings have been commenced; and this point also we consider determined by our own adjudications. Whenever the powers of the Orphans' Court are inadequate to the exigency, and cannot afford a sufficient remedy, resort may be had to a court of Chancery: Leavins v. Butler, 8 Por. 381; Scott v. Abercrombie, 14 Ala. 270; Dement v. Boggess, *supra.* Here the bill in effect charges the deficiency of legal assets to satisfy the complainant's demand, and seeks to supply the deficiency out of property, which, it is alleged, has been fraudulently placed by the intestate under cover of the trust. The Orphans' Court can deal only with the rightful administrator as such, and Leachman as the personal representative cannot administer the property, the title to which is in him, as trustee, being bound by the fraud of his intestate, (Rochelle v. Harrison, 8 Por. 352; Densler v. Edwards, 5 Ala. 81; Dearman v. Radcliff, ib. 82; Roden v. Murphy, 10 Ala. 804;) although the estate has been declared insolvent, (Marler v. Marler, 6 Ala. 367.) If the legal assets are insufficient, and the rightful administrator as such cannot administer the property subject to the claims of creditors, and fraudulently held, it follows, that the Court of Chancery is the only forum in which relief can be obtained, and the allegation of these facts is sufficient to withdraw the proceedings from a court whose powers are inadequate to the exigency. Neither do we entertain any doubt, that the administrator of the intestate, as such, was properly made a party to the bill, the object of which was, to reach property which could only be made subject to the payment of the debts of the intestate upon a deficiency of assets, which can be ascertained in no other mode than by taking an account with the personal representative.

In relation to the statute of non-claim: The bill alleges the presentation of the claims of the complainant within eighteen months after the grant of letters, and although the benefit of the statute is claimed by the defendants Leachman and Sarah Roberts, by way of plea, the answers do not positively deny the presentation, although the answer of the former avers that if such was the case it has escaped his recollection. Under these circumstances, proof of the fact by one witness is sufficient. Heartt v. Corning, 3 Paige 566. One witness

swears to the admissions of the administator, that the claims were presented in due time; but these admissions were made after the eighteen months had expired, and it is insisted that the fact in issue cannot be established by admissions of this character. The rule of the English authorities, founded on the case of Bauerman v. Radenius, that the admissions of the party to the record are in all cases receivable in evidence, is not generally recognized as law to its full extent in the American courts, (Cow. & Hill's Notes to Phillips' Ev. 163, and cases there cited;) and in this State it has been repeatedly held, that the admissions of a merely nominal plaintiff, made at a time when he had no real interest, were inadmissible to charge the party actually in interest. Chisholm v. Newton & Wiley, 1 Ala. 371; Copeland & Lane v. Clarke, 2 Ala. 388; Brown v. Foster, 4 Ala 282; Head v. Shaver & Adams, 9 Ala. 793. The case of an executor or administrator is, however, different from that of a naked trustee, and although he will not be allowed by his act or admission to create a claim against the estate, yet the rule established in this, as well as several of the other States, is, that he may by his promise or admission revive one already created, although such promise has the effect of charging the estate. Newhouse v. Redfield, 7 Ala. 598; Hall, Weeks & Co. v. Darrington, 9 Ala. 502; Forsyth v. Ganson, 5 Wen. 558; McIntire v. Morris, 14 Wen. 90; Manson v. Felton, 13 Pick. 206; Farmer v. Gray, 21 Pick. 245. While we are not fully satisfied with the decisions referred to, we do not feel ourselves at liberty to depart from them; and although the statute of non-claim is not a statute of limitations, and the bar created by it cannot be removed by a subsequent promise, (Branch Bank of Decatur v Hawkins, 12 Ala. 755,) yet the principles which govern the two statutes are in some respects analogous. It would be a strange anomaly, to hold that an admission by the personal representative in relation to the claim itself, of which he might know nothing, would be received as evidence to charge the estate in his hands, and yet hold that the admissions of the same party, not in relation to a claim against the estate, but as to an act entirely personal, and attached to him solely in his representative character, could not be received as evidence of such act. We are therefore of the opinion, that the

admissions of the administrator, Leachman, made by him during the continuance of his representative character, although after the expiration of the eighteen months from the grant of letters, are evidence of the fact of presentation ; and if they are to be regarded as evidence of this fact against the administrator, they are equally evidence of the same fact against the other parties. The admissions of the personal representative which will take the debt out of the statute do not bind the heir, for the reason that the one represents the personal, and the other the real estate, and the admission of the administrator, operating only on the estate which he represents, is as to the heir an act *inter alios*. But in relation to the presentation of claims, the administrator represents the whole estate.

As to the weight of this evidence, we may remark, that the fact to be proved is not of a character that requires any high degree of proof to satisfy the mind. The witness swears positively to the admission of the administrator, and although he was evidently mistaken in the time when the conversation took place, an immaterial fact, it is highly improbable that he could have been so, as to the character or extent of the admissions themselves, which under the circumstances cannot be regarded as loose or casual. The testimony of this witness is corroborated, by the payments which are admitted to have been made by the administrator to the complainant, both before and after the termination of the eighteen months, as well as by his return on oath after that period, of the judgments as existing debts against the estate. The presumption arising from the payment is, that the person paying has made the payment correctly—that he has inquired into, and is satisfied with the title of the receiver; and the fact of the payment is therefore evidence of the right of the receiver. James v. Biou, 2 Sim. & Stu. 600 ; 1 E. C. Ch. R. 608. It was the duty of the administrator not to have paid any debt which the statute of non-claim had barred. It was his duty, in the report of insolvency not to have included any such claim as an existing debt against the estate, and the presumption is, that in these respects he has discharged his duty. We regard the evidence as to the due presentation of the claims as sufficient.

We come now to the real merits of the case. The bill

makes a demand upon a family of slaves known as Lucy and her children, on the ground that, although included in the trust deed, they were in reality the individual property of the intestate, derived by gift from his father-in-law, Woodliff Beville. The answer of Mrs. Roberts denies the gift; but upon this point it is entitled to no weight, as the statement she makes as of her own knowledge, that these slaves were taken from the possession of her husband by her father, and retained in possession by him for a year immediately preceding his death, is not only disproved by the evidence of Thomas L. Beville, Hall and Edgeworth, but also by her own witness, Richard Roberts; and the rule is, that an answer disproved in a material statement loses its weight as evidence. Geiger v. Hall, 1 Call, 191. Neither do we attach any importance to the testimony in relation to the occasional absence of these slaves at Woodliff Beville's; it is entirely too loose and uncertain to base any conclusion upon, and the continuous possession for five years by the intestate is sufficient, unless rebutted by satisfactory proof, to raise the presumption of a gift. Olds v. Powell, 7 Ala. 652; Hooie v. Harrison, 11 Ala. 499; Merriweather v. Eames, 17 Ala. 330. The limited circumstances, however, of Roberts at the time he received the possession of these slaves, are sufficiently established; and it also appears from the depositions of two of the complainant's witnesses, Murphy and Robinson, that about the same time he was reputed to have failed in business, and the latter states that he believes the fact of his embarrassments was generally known about Erie, the place where he then resided. Under these circumstances, it is not probable that a man of ordinary prudence, having a just regard for the interests of his daughter, would confer the absolute title of slaves intended for her benefit, upon her husband. The testimony of Mrs. Brooks and Mrs. Beville is positive and circumstantial, as to the slaves going into the possession of Roberts as a loan; that his failure in Madison county was at the time assigned by the owner as the reason for making this disposition of them, and that the other members of the family were called upon as witnesses to the arrangement. These are family witnesses, it is true, but the facts deposed to by them are in accordance with the motives which ordinarily

43

regulate human conduct under similar circumstances, and in all respects consistent with the subsequent acts of Woodliff Beville. Without attempting to reconcile the testimony of these witnesses with that of Thomas L. Beville upon the same point, or discriminating as to the position they respectively occupy to the parties in interest, it is sufficient to observe that, under all the circumstances, we consider the evidence as sufficient to establish the fact, that the slaves referred to went into the possession of the intestate Roberts as a loan, and not as a gift; and this fact being established, we see nothing in the continuous possession of Roberts, in the will of Woodliff Beville, or in the conduct of any of the parties to the transaction, which would authorize us to infer that the intention of the lender, as declared at the time of the delivery of the possession, was subsequently changed.

Neither can the complainant in relation to these slaves derive any assistance from the second section of the statute of frauds, in relation to non-registered loans. Clay's Dig. 254, § 2. The law upon the clause referred to of that statute, as settled by this court, is, that if the owner resumes the possession of the property before the creditor enforces his lien upon it, it cannot afterwards be made subject to the debts of the borrower. Maull v. Hays, 12 Ala. 199; McCoy v. Odom, 20 Ala. A lien lost or destroyed is the same as if it had never existed, (Otey v. Moore, 17 Ala. 280;) and the executor of the lender having taken possession of the slaves before the creditor had enforced his lien, it is the same in legal effect as if the lender himself had resumed the possession of the property; and the creditor having failed to fasten his claim upon the property, during the existence of his lien, cannot afterwards assert it against the same property when in a different condition. Even if the slaves did not go into the possession of the executor, their appropriation and possession under the will of Woodliff Beville, would be sufficient to prevent the creditor from subjecting the property, after the loss or destruction of his lien. McCoy v. Odom, supra. As to these slaves, therefore, the demand of the complainant cannot be sustained.

In relation to the eighty acres of land which was purchased from Foster, the answers admit the purchase, but deny that

the consideration was paid to the vendor before the intestate received any portion of the trust funds; but upon these points insist, that the purchase was made for the benefit of Mrs. Roberts, and the land paid for in part with the trust funds, and in part with money raised on the credit of the trust funds; and as to the improvements on this tract, the answers also insist, that they were made by the trust slaves in the possession of Roberts, with the exception of some carpenter's work, which was paid for out of the trust funds. The evidence, however, shows that the last installment of the purchase money for this land was paid by Roberts, about the time it fell due in January, 1841, and that he did not receive any payment from the trust funds until the 20th of December in the same year. In the absence of any other testimony, this is conclusive to establish the charge in the bill, that this land was purchased with the individual funds of Roberts. So also in relation to the improvements on this tract, the evidence shows conclusively, from the different estimates placed upon them by the different witnesses who have been examined as to their value, that they were worth from six hundred to a thousand dollars, and that they were paid for by Roberts before he received any portion of the trust funds. The slaves Moses, Betsy and Perry, for which eight hundred and fifty dollars were paid, and the purchase made on the 14th July, 1841, are similarly situated; and the lot No. 91, exchanged for one-half of the eighty acre tract, of course occupies the same position as the land for which it was exchanged.

As regards the improvements which were made on the lot purchased on the 14th July, 1841, the answer insists that they amounted but to five hundred and ninety dollars, and that these improvements were also paid for out of the trust funds. The evidence however shows very clearly, that they could not have cost less than one thousand dollars, and that of the amount expended upon them the greater portion was paid out of the individual funds of the intestate, and the purchase of the lot having been made from the same source, and no portion of the trust funds traced into the lands or the improvements, no lien can result in favor of the trust estate, although the estate of the trustee will be responsible for the

deficiency, as for other debts. Vernon v. Vawdry, 2 Atk. 119; Cox v. Bateman, 2 Vesey, 19.

The correctness of the conclusions to which we have arrived upon the evidence, may be tested by a condensed view of the transactions to which we have referred. The total amount expended by Roberts for the eighty acre tract, the lot on Province street, and all the improvements, with the slaves Moses, Betsy and Perry, according to the evidence, amounted to near seven thousand dollars, and it is also proved that, during these expenditures, he received but a little over eleven hundred dollars from the trust funds. Nothing whatever is shown to have been realized from the "trust slaves; no loans contracted, or money raised in anticipation of, or on the credit of the trust funds; and indeed no attempt whatever made to account for the enormous disproportion between the amount shown to have been invested, and the actual amount received. The conclusion therefore, that these investments were made with the individual funds of the intestate, is irresistible; and upon the deficiency of the legal assets of his estate, they must be applied to the demands of his creditors, as also the hire, rents and profits arising therefrom, to be computed from the service of the bill. Backhouse v. Jetts, 1 Brock. 500.

In taking an account of what is due to the complainant, a material question arises, as to whether his demand is to be credited with the claim upon William Inge, which the evidence shows has been wholly lost. The receipt for this claim is given by the attorneys for the complainant, and states upon its face that it is to be credited on the judgments of the complainants against Roberts. No objection is raised as to the authority of the agents; but it is insisted that this credit should not be allowed, for the reason that it was not intended by the parties to have been received as an absolute payment, and has not and could not have been collected at any time since its receipt on account of the insolvency of Inge. By the terms of the receipt it was received as an absolute payment, and although instruments of this character are open to explanation, we do not regard the evidence of the only witness who has been examined upon this point, as sufficient to repel the presumption created by the language of the receipt.

He has no recollection as to whether it was received as an absolute payment, but deduces his conclusion that it was not from the fact that he had never received any instructions from his principal to take it as such, and from the insolvency of the person against whom the claim existed. Evidence of this character is not sufficient to outweigh the terms of the receipt, and this credit must be allowed.

Another question which will also arise in taking the account is, as to the credit claimed on the judgment of the complainant from the hire of the slaves Esther and Martha, from the 14th July, 1842, the time of the sale, to the rendition of the judgment for their conversion at the suit of the trustee. These slaves were trust property; the sale of them by Roberts was without authority, and a note given for the purchase money could, after the recovery against the purchaser, have been successfully defended. So also, the agreement to credit the hire upon the individual debt of Roberts was without consideration, and it would be contrary to equity to enforce it in favor of one who has no claim to the allowance, the purchaser having been charged, as in this case it appears from the evidence, with damages from the date of the transfer.

In relation to the claim which is advanced for the hire of the trust slaves, the general rule laid down by the counsel for the defendant in error is unquestionably the correct one. The father is bound to provide for the maintenance and support of his children, and it is not allowed, as a matter of course, out of their own property. 2 Story's Eq. § 1354 *a*; 1 Rop. Leg. 758. It is, however, equally true, that if the instrument creating the trust gives to the father this benefit, he is entitled to the advantage of it. Thompson v. Griffin, 1 Craig & Phil. 317. The question, therefore, here becomes one of intention, and construction upon the will of Woodliff Beville; and by the terms of that instrument it is provided, "that the slaves that will be coming to Sarah Roberts, are to be placed in the hands of a trustee, to manage the same for her own use and the use of her children, and that no person is to deprive the said Sarah and her children of the use of the same or any part thereof;" and in another part of the same instrument the testator adds, "All the property which I have given to my daughters is for their own use, and not to be taken

from them by any person or persons whatsoever." The intention of the testator to be ascertained from these clauses we think was, that the daughter, Sarah Roberts, and her children were entitled to the use and possession of the trust slaves against all persons; and if this be the correct construction, it follows necessarily, that during the time they so enjoyed the possession the conditions of the trust would be fulfilled. The evidence upon this point is, that these slaves were employed about the house, and the record furnishes no testimony that any of them were hired out, or that Mrs. Roberts and her children had not the use of them at all times.

It is also urged, that by the statute of this State, Clay's Dig· 173, § 7, the widow is entitled to the dwelling house in which her husband resided at the time of his death, free from rent, until her dower is assigned. This position is correct, (Inge v. Murphy, 14 Ala. 289; Shelton v. Carrol, 16 Ala. 148,) and in taking the account of the rents and profits of the real estate, the profits of the dwelling and premises occupied by Roberts at the time of his death must not be computed.

This disposes of all the points which legitimately arise in the case. The decree in the court below must be reversed, the costs in this court to be paid by the administrator, Leachman, and allowed as a claim against the estate of his intestate. The decree to be rendered should refer it to the master: First, To take and state an account of what may be due to the complainant upon his demands as stated in the bill, and such other creditors of the estate as shall come before the master upon reasonable notice, prove their demands, and contribute to the expenses of this suit their just proportion, to be settled by the master;

Secondly, To take and state an account of the assets in the hands of Leachman, as administrator, which must, under the direction of the master, be applied to the debts and other charges against the estate, in the due course of administration according to the laws of this State;

Further, That the west half of the east half of the north-west quarter of section eleven, township twenty-one, and range two east, as divided by a line running north and south through said east half of said north-west quarter, and the other lands described in the bill, and the slaves Moses, Betsey and

Perry, if the assets in the hands of said Leachman, as administrator, are insufficient to pay the debts of the estate in the due course of administration, be decreed subject to supply the deficiency of the debts proved before the master; and that a receiver be appointed, to take into possession all of such real estate, except the premises in the possession of the said Roberts at the time of his death, and hire and rent out the same under the direction of the master, and to receive the rents and profits and hire of the same, under the direction of the master, first giving security to be approved by him.

In case of a deficiency of assets in the hands of the said Leachman, as administrator, after a due administration of the same, and paying the charges and expenses thereof, to pay the debts proved on the account before the master, such deficiency must be raised from the hire, rents and profits of the slaves and real estate in the hands of the receiver, and from the sale of said slaves and real estate, as also the sale of the other lot in Eutaw as described in the bill; such sale to be made under the direction of the master.

If the hire, rents and profits in the hands of the receiver, and the sale of said slaves and real estate are not sufficient to pay said debts, the master must take and state an account with the said Leachman, of the hire of said slaves, and rents and profits of said real estate from the service of the bill upon him, not computing the rents, &c., of the premises in the possession of said Roberts at the time of his death, and that said Leachman be decreed to pay the amount due on such account to the demand of the complainant and the other debts against the estate proven before the master.